**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAMON J.[1]

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:23-cv-36

Newman, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

  Plaintiff Damon J. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Plaintiff presents a single claim of error. For the reasons explained below, the ALJ's finding of non-disability should be AFFIRMED.

  **I. Summary of Administrative Record**

  On May 7, 2018, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging a disability beginning May 4, 2016. (Tr. 341). After his application for benefits was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a hearing held on June 30, 2020, Plaintiff appeared with counsel and gave testimony before ALJ Kevin Barnes; a vocational expert also testified. (Tr. 100-121). On July 30, 2020, the ALJ issued an adverse written

---

[1] Due to significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

decision. (Tr. 172-191). After Plaintiff filed an administrative appeal, however, the Appeals Council remanded to the ALJ for further development of the record. (Tr. 192-197).

In response to the Appeals Council order of remand, ALJ Barnes held a second hearing on November 2, 2021. (Tr. 84-99). On December 29, 2021, the ALJ issued a second adverse written decision. (Tr. 8-35). Following the ALJ's second decision, the Appeals Council denied further review, and the ALJ's decision became the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff is single and lives in a house with his mother. (Tr. 16). He has a high school education and past relevant work as a nurse's aide and as a motor vehicle assembler. (Tr. 14). He was 41 years old on the date of his alleged onset of disability, which is considered a "younger individual." He remained in the same age category through the date of the ALJ's decision. Based on his work history, he met insured status requirements for DIB through December 31, 2021, meaning that he must establish disability on or before that date in order to be entitled to benefits. (Tr. 13).

The ALJ determined that Plaintiff has the following severe impairments: "cervical degenerative disc disease, osteoarthritis of the right shoulder, bilateral carpal tunnel syndrome, adjustment disorder with mixed anxiety and depressed mood, and anxiety disorder." (Tr. 15). The ALJ also found medically determinable but "non-severe" impairments, including "hypertension, erectile dysfunction, and hyperlipidemia." (Tr. 16). None of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*See* Tr. 19).

Considering all of Plaintiff's impairments, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform less than a full range of light work, subject to the following additional limitations:

> (1) frequently pushing/pulling bilaterally; (2) occasionally climbing ramps and stairs, balancing, stooping, crouching, and kneeling; (3) never climbing ladders, ropes, or scaffolds, or crawling; (4) occasional use of the bilateral upper extremities for reaching fully extended and overhead; (5) frequent use of the bilateral hands for handling and fingering; (6) avoid hazardous machinery and unprotected heights; (7) performing simple, routine, and repetitive tasks; (8) no fast-paced production requirements; (9) simple, work-related decisions; (10) few, if any, workplace changes; (11) occasional interaction with the public; (12) occasional interaction with coworkers; and (13) no tandem tasks.

(Tr. 19-20).

Based upon the RFC as determined, the ALJ held that Plaintiff could no longer perform any of his past relevant work, all of which was performed at the medium exertional level. (Tr. 25). However, the VE testified and the ALJ determined that Plaintiff could still perform a substantial number of unskilled jobs existing in the national economy, including the representative positions of groover and stripper, marker, and routing clerk. (Tr. 26). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id.*)

In this judicial appeal, Plaintiff asserts error in the ALJ's evaluation of a psychological opinion that the ALJ found to be "persuasive." Specifically, Plaintiff argues that the ALJ failed to adequately explain why he failed to include in Plaintiff's mental RFC the following specific limitations endorsed by the non-examining agency consultant: (1) that Plaintiff's social interaction limitations mean that he "can interact superficially with supervisors, coworkers, and the general public" (Tr. 166); (2) that Plaintiff's concentration and persistence limitations mean that he should be limited to "short cycle work in a setting that does not have fast pace demand and where [he] can work away from others" (Tr. 166); and (3) that Plaintiff's adaptation limitations mean that he "can work within a set

routine where major changes are explained in advance and gradually implemented." (Tr. 167). The undersigned finds no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....
> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted); *see also Biestek v. Com'r of Soc. Sec.*, 139 S. Ct. 1148, 1154 (2019) (explaining that "the threshold for such evidentiary sufficiency is not high.")

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Evaluation of Plaintiff's RFC is Substantially Supported**

Plaintiff asserts error in the ALJ's assessment of Plaintiff's mental RFC, and in particular, in the ALJ's evaluation of one of the three psychological opinions that the ALJ

considered to inform his assessment of Plaintiff's mental RFC findings.[2] Prior to reviewing the claim of error, the undersigned reviews the relevant mental health evidence.

### 1. Relevant Mental Health Evidence

The relevant mental health evidence includes: (1) a prior ALJ decision from 2010; (2) three consulting psychological opinions issued in 2018 and 2019; and (3) Plaintiff's subjective statements about his mental health symptoms.

A prior ALJ decision of January 22, 2010 found that Plaintiff had <u>nonsevere</u> mental impairments of an adjustment disorder with depressed mood and alcohol dependence. (Tr. 16). Although ALJ Barnes considered the prior decision in his November 2022 decision, he found "new and material" evidence of additional mental impairment that had occurred since the prior adverse determination. (Tr. 12). The ALJ noted, for example, that Plaintiff had been treated for an anxiety disorder in 2015. He was then discharged in November 2015 for failing to continue treatment. (Tr. 621).

While indicative of additional mental health symptoms, the 2015 treatment occurred when Plaintiff was still employed, prior to his alleged onset of disability. Based on the "minimal evidence of treatment" during the disability period, he was referred for a consultative examination "to clarify the nature and severity of any mental impairment." (Tr. 16). Initially, Plaintiff failed to attend his scheduled consultative examination in August 2018 and did not call in to discuss the missed appointment. (Tr. 144-145, 147). On September 3, 2018, based on Plaintiff's failure to cooperate, reviewing consulting psychologist Juliette Stephens, Ph.D. found insufficient evidence to assess any mental impairment. (Tr. 17; Tr. 147).

---

[2]Because Plaintiff does not challenge the ALJ's assessment of his physical RFC in this appeal, any issues relating to his physical RFC are deemed waived.

Six months later on March 29, 2019, Plaintiff attended a rescheduled consultative examination by psychologist Robert Kurzhals, Ph.D. (Tr. 812-818) During that exam, Plaintiff "endorsed physical health concerns and depressive and anxiety symptoms including low mood/energy, variable appetite, sleep disturbance, auditory hallucination, and panic attacks." (Tr. 16). Despite his symptoms, he had not received mental health treatment since 2015, and had never been hospitalized for psychiatric symptoms. (*Id.*) Dr. Kurzhals diagnosed Plaintiff with depression and anxiety. (Tr. 17).

Following the completion of Dr. Kurzhals' consultative examination, reviewing consulting psychologist, Kristen Haskins, Psy.D., evaluated the record on reconsideration on April 3, 2019. The ALJ summarized her findings as follows:

> Dr. Haskins concluded that the claimant has "severe" mental impairment of a depressive, bipolar, and related disorders. The claimant has a mild limitation in his ability to understand, remember, or apply information. He has a moderate limitation in his ability to interact with others and concentrate, persist, or maintain pace. The claimant also has a moderate limitation in his ability to adapt or manage oneself. According to Dr. Haskins, the claimant is able to perform routine, short-cycle work in a setting that does not have fast-pace demand or strict time limitations or production standards where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations and interactions with supervisors, coworkers, and the general public are on a superficial basis (Exhibit B4A at 15-17). Thus, pursuant to AR 98-4(6), Dr. Haskins declined to adopt the findings in the prior ALJ decision (Exhibit B4A at 17) which found that the claimant had no more than a mild restriction in activities of daily living or in social functioning and only a mild limitation in his capacity to maintain concentration, persistence, or pace (with no episodes of decompensation of extended duration) (Exhibit B1A at 11).

(Tr. 17).

In addition to the opinion evidence offered by agency psychologists, the ALJ evaluated Plaintiff's subjective statements. The ALJ considered the objective evidence and Plaintiff's wide range of activities. (Tr. 17-18). The ALJ noted that Plaintiff was able to maintain positive relationships with family and friends who he describes as a "major

support," and that Plaintiff describes himself as "friendly and outgoing." (Tr. 18). The ALJ found Plaintiff's reports to be consistent with his presentation on multiple treatment occasions. (*Id*.) Plaintiff also reported that he generally related adequately to coworkers and supervisors when working. And he was "polite friendly, and cooperative" during his psychological examination. (*Id*.). The ALJ reasoned that "the claimant has received comparatively little treatment" including no mental health treatment during the disability period, and that "mental status examination findings throughout the record are unremarkable." (Tr. 24). The ALJ also noted that consulting psychologists found that Plaintiff's "anxiety- and depressive-based symptoms are of no more than moderate-level severity." (Tr. 24). Therefore, the ALJ made an adverse credibility/consistency finding, reasoning that Plaintiff had failed to present "objective medical evidence or clinical findings to establish a ….mental impairment that would result in any greater degree of limitation" than the RFC as determined. (*Id*.)

### 2. Plaintiff's Claim of Error

Plaintiff does not challenge the ALJ's adverse assessment of his subjective statements, nor does Plaintiff challenge the ALJ's assessments of the opinions of examining psychologist Dr. Kurzhals or of reviewing psychologist Dr. Stephens. Instead, Plaintiff limits his claim of error to the manner in which the ALJ articulated his analysis of the opinions of reviewing psychologist Dr. Haskins on reconsideration. Plaintiff claims error in the "omission" of three phrases included by Dr. Haskins but not used in the RFC determined by the ALJ at Steps 4 and 5 of the sequential analysis. The undersigned finds no reversible error.

### a. The ALJ's Written Analysis

The ALJ's written decision thoughtfully moves through the requisite sequential steps for all three agency consulting psychological opinions. The ALJ began by pointing out that in order to show his mental impairment was "severe" at Step 2, Plaintiff was required to show a "moderate" degree of limitation in at least one of the four Paragraph B areas.[3] (Tr. 18). The ALJ acknowledged the prior agency finding in 2010 that Plaintiff had no moderate limitations or severe mental impairment. And the ALJ noted that prior to the rescheduled consultative psychological examination, reviewing consultant Dr. Savtiscus found insufficient information to assess the severity of *any* mental impairment due in part to Plaintiff's failure to attend the consultative exam. (Tr. 17).

But the ALJ discussed additional records including the March 2019 consultative examination by Dr. Kurzhals, and evidence that supported a finding of severe impairments of depression and anxiety. Based on that evidence, the ALJ found Dr. Savtiscus's contrary opinion to be "not persuasive." (*Id.*) Despite finding severe mental impairments at Step 2, the ALJ found no Listing level impairment at Step 3.[4]

The ALJ then considered the opinions of Dr. Kurzhals and Dr. Haskins at Steps 4 and 5 of the sequential analysis in order to formulate Plaintiff's mental RFC. The ALJ began with Dr. Kurzhals' CE report, on which Dr. Haskins relied at the reconsideration level, and which the ALJ found to be persuasive:

> Though his assessment does not include the most precise or vocationally relevant terms, he did conclude the claimant has little to no need for repetition or clarification and still was able to understand and follow simple instructions during the examination. Further, Dr. Kurzhals concluded the

---

[3]The Paragraph B domains include the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace, and the ability to adapt or manage oneself.

[4]Plaintiff does not dispute the ALJ's Step 2 or Step 3 findings.

> claimant is cognitively capable of managing funds. He did suggest the claimant has deficits with concentration, social functioning and adapting to normal workplace pressures which clearly give maximum benefit to his complaints of depressed mood and anxiety since there is minimal evidence of any effort at ongoing psychological treatment. But given the claimant's diagnoses it is reasonable to conclude that some areas of mental functioning are likely to be affected as Dr. Kurzhals opined, and therefore, his opinion evidence is persuasive.

(Tr. 17).

Turning to Dr. Haskins' opinions, the ALJ first reiterated why Dr. Haskins' opinion that Plaintiff has "severe" mental health impairments were persuasive at Step 2 of the sequential analysis. In that context, the ALJ wrote:

> Dr. Haskins concluded that the claimant has "severe" mental impairment of a depressive, bipolar, and related disorders. The claimant has a mild limitation in his ability to understand, remember, or apply information. He has a moderate limitation in his ability to interact with others and concentrate, persist, or maintain pace. The claimant also has a moderate limitation in his ability to adapt or manage oneself. …Thus, pursuant to AR 98-4(6), Dr. Haskins declined to adopt the findings in the prior ALJ decision (Exhibit B4A at 17) which found that the claimant had no more than a mild restriction in activities of daily living or in social functioning and only a mild limitation in his capacity to maintain concentration, persistence, or pace (with no episodes of decompensation of extended duration) (Exhibit B1A at 11).
>
> The undersigned finds Dr. Haskins correctly concluded there is new and material evidence as to the claimant's mental functioning. In this respect, her assessment is persuasive.

(Tr. 17).

Next, the ALJ considered Dr. Haskins' opinions at Steps 4 and 5 regarding Plaintiff's mental RFC limitations:

> According to Dr. Haskins, the claimant is able to perform routine, short-cycle work in a setting that does not have fast-pace demand or strict time limitations or production standards where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations and interactions with supervisors, coworkers, and the general public are on a superficial basis.

(*Id*.) The ALJ explained that he had considered and incorporated Dr. Haskins' opinions into Plaintiff's mental RFC:

> When considered together, these restrictions (incorporated into the residual functional capacity discussed below) are sufficient to ensure that any tasks the claimant would be compelled to have as part of his actual job duties fully accommodate any difficulties with interpersonal nuance, cognitive deficits, and stress tolerance the claimant might experience during bouts of increased symptoms.

(Tr. 17).

Before this Court, Plaintiff complains that the ALJ erred by "pick[ing] and choos[ing] which part" of Dr. Haskins' opinions to include in Plaintiff's mental RFC. (Doc. 9, PageID 1345). Plaintiff argues that the ALJ failed "to explain *why* he omitted or altered some of the limitations" in his mental RFC despite finding Dr. Haskins' opinions to be "persuasive." (Doc. 9, PageID 1345, emphasis added; *see also id*., PageID 1347, arguing that the ALJ's omission of specific phrases articulated by Dr. Haskins constitutes reversible error). And he complains that the ALJ committed an additional error by failing to adequately explain how he considered the "supportability" and "consistency" factors in his assessment of Dr. Haskins' opinions. (*Id*., PageID 1346).

### b. The ALJ Adequately Articulated Supportability and Consistency

With respect to the ALJ's assessment of "supportability" and "consistency" factors, I find no error. Because Plaintiff's application was filed in 2018, this case is subject to 20 C.F.R. § 404.51520c, which requires an ALJ to articulate how he considered the "supportability" and "consistency" of each medical source opinion or prior administrative medical finding. Despite very briefly suggesting articulation error in this regard, Plaintiff admits that "[t]he ALJ found [Dr. Haskins'] opinions to be supported by and consistent with the record." (Doc. 9, PageID 1349; *id*., PageID 1348).

11

The undersigned concludes that the ALJ adequately discussed both the consistency and supportability of Dr. Haskins' opinions. As a non-examining agency consultant, Dr. Haskins based her opinions on a review of the record on the date of reconsideration, and provided those opinions on a standard Psychiatric Review Technique Form ("PRTF"). The PRTF succinctly lists the evidence that Dr. Haskins considered – here, Dr. Kurzhals' CE report and other medical records in evidence at the time of her review, most of which focused on Plaintiff's physical health. (Tr. 153-156). As discussed, Plaintiff did not seek mental health treatment during the relevant disability period. Dr. Haskins therefore relied heavily on Dr. Kurzhals' CE report, citing it as "congruent with the clt's presentation during the consultative exam" and "consistent and supportable." (Tr. 162).

The ALJ fully considered and discussed the same evidence reviewed by and relied on by Dr. Haskins ("supportability"). The ALJ also adequately explained and cited to other evidence in the record that was consistent with the levels of moderate limitation found by Dr. Haskins (Tr. 18-19), notwithstanding Plaintiff's "minimal evidence of treatment" (Tr. 16) and the ALJ's negative assessment of Plaintiff's subjectively reported symptoms. Therefore, the ALJ articulated his analysis of both supportability and consistency factors. *See Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-cv-4932, 2022 WL 765217, at *5 (S.D. Ohio Mar. 14, 2022) (explaining that when one doctor bases his opinion on another's findings that are also in the record, overlap between "consistency" and "supportability" is inevitable); *see also Sasha M. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2101-EAS-KAJ, 2023 WL 1793536, at *7 (S.D. Ohio Feb. 7, 2023), *report and recommendation adopted*, No. 2:22-CV-2101, 2023 WL 6383450 (S.D. Ohio Sept. 29, 2023) ("[T]he ALJ cited to the same records upon which the state agency psychologists based their opinions.... In other

words, she considered supportability and the opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence") (internal quotations omitted).

### c.  The Mental RFC Does Not Conflict with Dr. Haskins' Opinions

I also find no error regarding the allegedly "omitted" limitations. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at*7 (emphasis added). Here, the undersigned disagrees with Plaintiff's underlying premise that the ALJ's RFC materially conflicts with "omitted" phrases in Dr. Haskins' PRTF. Rather, the ALJ's articulated formulation of Plaintiff's mental RFC was a reasonable translation of Dr. Haskins' limitations into vocationally appropriate terms. The ALJ set forth seven separate mental RFC limitations: "[1] performing simple, routine, and repetitive tasks; [2] no fast-paced production requirements; [3] simple, work-related decisions; [4] few, if any, workplace changes; [5] occasional interaction with the public; [6] occasional interaction with coworkers; and [7] no tandem tasks." (Tr. 21).[5]

Plaintiff accuses the ALJ of improperly omitting or altering three limitations endorsed by Dr. Haskins: (1) that Plaintiff was limited to "superficial" interactions; (2) that Plaintiff needed an environment "where he could work away from others"; and (3) that Plaintiff required an environment "where changes could be explained." (Doc. 9, PageID 1347, citing Tr. 166). But Plaintiff merely *assumes* that the failure to include Dr. Haskins' phrasing verbatim represents a conflict. To the contrary, the undersigned finds no material conflict or inconsistency between the RFC determined by the ALJ in this case and Dr.

---

[5]In the ALJ's written decision, the mental RFC limitations appear in numerical order as limitations 7-13. (Tr. 21).

Haskins' opinions. Because there is no conflict, Plaintiff can show no prejudice that resulted from the ALJ's failure to use Dr. Haskins' phrases verbatim.

Take the limitation to "superficial" interactions. Notwithstanding a split in intra-district authority (which is *not* cited by Plaintiff herein),[6] multiple courts including the Sixth Circuit have found no error when an ALJ translates an opinion that a plaintiff should be limited to "superficial" workplace interactions into a mental RFC that limits the individual to only "occasional" interactions in unskilled work without inclusion of the word "superficial." That is precisely what happened in *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267 (6th Cir. 2015), where two agency psychologists opined that the plaintiff was moderately limited in his ability to interact appropriately with the public and is "able to relate to a few familiar others on a superficial basis." *Id.* The district court record reflects that the ALJ assigned their opinions the most weight ("great weight"), but then translated the opinions that plaintiff could "relate to a few…on a superficial basis" into an RFC limitation to "only occasional interaction with the public." *Reeves v. Colvin*, No. 3:13CV1425, 2014 WL 4675321, at *4, 8 (N.D. Ohio Sept. 18, 2014). Before both the district court and the appellate court, the plaintiff unsuccessfully argued that the RFC limitation to "occasional interaction" was inconsistent with the ALJ's acceptance of the psychologists' opinions limiting plaintiff to "superficial" interactions. Affirming, the Sixth Circuit succinctly rejected that argument as "without merit," concluding that "the ALJ's

---

[6]Because Plaintiff's argument on the issue in *this* case is so cursory, the undersigned limits her analysis to a discussion of *Reeves*. However, to the extent that Plaintiff argues for reversible error based on the divergent case law in this district on whether "superficial" means something different than "occasional" interactions in the vocational context, the undersigned refers the reader to her more detailed analysis and relevant case law cited in *Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-cv-746, 2023 WL 4991918 at *6-14 (Aug. 4, 2023) (explaining why some courts' emphasis on the "qualitative" nature of the vocationally-undefined adjective "superficial" as if in conflict with the defined "quantity" of interaction sets up a false dichotomy, ignoring the reality that time-limited "occasional" interactions in an unskilled work setting are reasonably understood to require only surface-level interactions).

mental RFC determination was supported by substantial evidence in the record and <u>is not</u> <u>inconsistent with either of the state agency psychologists' opinions</u>." *Reeves*, 618 Fed. Appx. at 275 (emphasis added). The appellate court further concluded: "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Id.* (additional citation omitted). Therefore under *Reeves*, it is irrelevant that the ALJ translated the "superficial" limitation into an "occasional" limitation because: (1) there is no inconsistency in vocational terms; and (2) "wholesale" adoption of every opinion is not required.

Next up is Dr. Haskins' opinion that Plaintiff should be able to "work away from others," a limitation offered in the context of Plaintiff's ability to maintain concentration, persistence and pace. Dr. Haskins opined that Plaintiff has no limitation in his ability to remember work-like procedures, and is not significantly limited in his abilities to understand and remember either short and simple instructions or detailed instructions. (Tr. 165). She found Plaintiff not to be significantly limited in his ability to carry out short and simple instructions, and only moderately limited in his ability to carry out detailed instructions. (Tr. 166). She found moderate limitations in Plaintiff's ability to "work in coordination with or in proximity to others without being distracted by them," in his ability to complete a normal workday without interruptions from his psychological symptoms, and to perform at a consistent pace without unreasonable rest periods. (Tr. 166). Asked to sum up the referenced "moderate" concentration and persistence limitations in narrative form, Dr. Haskins wrote that Plaintiff "can maintain concentration, persistence, and pace on short-cycle work in a setting that does not have fast pace demand and where [he] can work away from others." (*Id.*)

15

The ALJ discussed other evidence of record that undermined more severe limitations in concentration, persistence and pace, including treatment records that "routinely describe the claimant as alert and fully-oriented," with his "[a]ttention span and concentration…documented as normal." (Tr. 19). Plaintiff described himself as a hard worker, and the ALJ noted that his hobbies of watching television and reading "require some measure of concentration." (Tr. 19). Considering Dr. Haskins' opinions, the ALJ translated them into clear RFC limitations to no more than "occasional" interactions with coworkers with no tandem tasks.

Elimination of "tandem" work obviously precludes "work with others." The ALJ also captured Dr. Haskins' limitations to "simple" and repetitive work with no fast-pace production requirements. To the extent that Plaintiff would argue that Dr. Haskins' opinion might be construed as requiring some greater level of "work alone" time, the ALJ's translation into the referenced RFC was within a reasonable "zone of choice." The limitation to only "occasional" interactions with no tandem tasks ensures minimal work interactions with others, and reflects the ALJ's express consideration of other evidence in the record.

Last, the undersigned considers Plaintiff's argument that the ALJ omitted Dr. Haskins' opinion that "major changes should be explained." That opinion was a narrative phrasing of her opinion that Plaintiff has moderate limitations in his ability to respond appropriately to changes in the work setting. (Tr. 167). Notably, Dr. Haskins opined that Plaintiff is not significantly limited in *any* other area of adaptation. (Tr. 167). But when explaining Plaintiff's adaptive limitations in narrative form, Dr. Haskins wrote:

> Claimant can work within a set routine where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations. The claimant's ability to handle routine stress and

> pressure in the work place would be reduced, but adequate to handle tasks without strict time limitations or production standards.

(Tr. 167).

Once again, the ALJ discussed other evidence in the record that both supported and contradicted the evidence of adaptive limitations, citing to multiple records.

> The claimant does have a history of mental health treatment as well as legal involvement and alcohol abuse (Exhibit B2F), each of which could be indicative of reduced stress tolerance. Yet, he also has exhibited clear indicators of an ability to adapt and manage. For example, he presents as appropriately groomed … and has evidenced intact mental functioning with normal thought content … and fair to good insight/judgment …. And he has exhibited clear indicators of ability to adapt and manage in his performance of activities of daily living: he has lived independently in the past (Exhibits B2F at 3 / B11F at 1) and drives, and does household tasks and yardwork. The claimant engages in enjoyable activities.

(Tr. 19).

Ultimately, the ALJ translated Dr. Haskins' narrative opinion into a vocational RFC that included limitations to the type of work Plaintiff can perform ("simple, routine, and repetitive tasks") with "no fast-paced production requirements") and further limited him to "simple, work-related decisions" with "few, if any, workplace changes."  (Tr. 21). Given the context of Dr. Haskins' opinion (moderate limitations in the ability to adapt to workplace changes) as well as the ALJ's discussion of other records bearing on the same issue, the limitation to "few, if any, workplace changes" was a reasonable translation of Dr. Haskins' opinion and is substantially supported by the record as a whole.

Thus, considered in context, the undersigned finds no material conflicts between the RFC as determined and Dr. Haskins' opinions. At the same time, the undersigned can easily follow the ALJ's reasoning for the RFC as determined.

In addition to the lack of substantive conflict between the RFC and Dr. Haskins' opinions, the ALJ was not required to adopt every facet of every opinion expressed by Dr Haskins on the PRTF merely because he found Dr. Haskins to be "persuasive."

> The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.

*Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. 2009).

The revised regulations that took effect on March 17, 2021 did not change the law in this respect, meaning that the formulation of the claimant's RFC remains solely within the province of the ALJ. In determining Plaintiff's mental RFC here, the ALJ was not required to adopt every aspect of Dr. Haskins' opinions. "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim, nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015); *William D. v. Comm'r of Soc. Sec.*, 2:20-cv-5855-ALM-EPD, 2022 WL 883928, at *4 (S.D. Ohio March 25, 2022) (affirming ALJ's failure to include a limitation from a "persuasive" psychological report, because an ALJ need not adopt a medical opinion verbatim, and the court was able to trace and understand the ALJ's reasoning for not including that specific portion of the opinion); *Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-cv-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019) ("nor, as the case law above makes clear, was the ALJ required to explain why he did not adopt their opinions in full.") R&R adopted at 2019 WL 3083112 (S.D. Ohio July 15, 2019).

18

Plaintiff makes a valiant but ultimately unpersuasive attempt to split hairs on this point. In his Statement of Errors and in his reply memorandum, he insists that he is not arguing that the ALJ was under any obligation to adopt or include "verbatim" any specific functional opinion. (*See* Doc. 12, PageID 1365). Instead, he recasts his argument as an articulation error – that the ALJ erred by failing to explicitly explain *precisely why* three limitations that were not included "verbatim" were "omitted." (*Id.*)

But no such articulation requirement exists. An ALJ is required to sufficiently explain his decision so that a reviewing court can understand it. But – in the absence of a clear <u>conflict</u> between the RFC adopted by the ALJ and a medical source opinion – the ALJ is not required to detail *ad nauseum* why he chose to use one phrase or another. Plaintiff's insistence on a higher level of articulation for medical opinions that an ALJ finds to be persuasive runs counter to the cited case law, including *Reeves*, which holds that an ALJ need not explain his or her reasons for failing to use "verbatim" language or incorporate medical opinions "wholesale."

It is Plaintiff who retains the ultimate burden of proving he was disabled in this case, including the burden of showing that the RFC determined by the ALJ is not substantially supported and that Plaintiff requires additional limitations. It is not enough to point out evidence that would support some alternate decision; this Court will affirm so long as the ALJ's decision was within a reasonable zone of choice. Here, it is abundantly clear that the ALJ's RFC determination was substantially supported. In his discussion of the record as a whole, including but not limited to his discussion of the opinion evidence, the ALJ created a logical bridge between the evidence presented and the ultimate non-disability conclusion. *See Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT the decision be AFFIRMED** and that this case be **CLOSED.**

_s/Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DAMON J.                                              Case No. 3:23-cv-36

       Plaintiff,                                 Newman, J.
                                                     Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).